# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ASHLEY RENEE PINON,

    Plaintiff

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security Administration,

    Defendant

Case No.: 3:22-cv-00139-CSD

**Order**

Re: ECF Nos. 22, 25

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 22.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 25, 26.) Plaintiff filed a reply. (ECF No. 28.)

After a thorough review, Plaintiff's motion should be granted; the Acting Commissioner's motion should be denied; and this matter should be remanded for further proceedings consistent with this Order.

## I. BACKGROUND

On or around July 18, 2018, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning on June 1, 2017. (Administrative Record (AR) 252-273.) The applications were denied initially and on reconsideration. (AR 175-188.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 189-190.) ALJ William Kurlander held a hearing on December 8, 2020. (AR 65-100.) Plaintiff, who was

1   represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was

2   also taken from a vocational expert (VE). On March 10, 2021, the ALJ issued a decision finding

3   Plaintiff not disabled. (AR 17-39.) Plaintiff requested review, and the Appeals Council denied

4   the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-4.)

5   Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g).

6   Plaintiff argues: (1) the ALJ mischaracterized and failed to consider findings of limited range of

7   motion in her lumbar spine which are inconsistent with the ability to perform medium work;

8   (2) the ALJ did not specifically address the findings of the state agency psychologists that

9   Plaintiff could carry out simple and some detailed instructions in a well-spaced setting with

10  limited public contact, and that she could interact with the public in brief, non-intensive

11  encounters; and (3) the ALJ did not state reasons for rejecting Plaintiff's treating psychiatrist's

12  finding that Plaintiff had serious limitations in the ability to deal with work stress and carry out

13  detailed instructions.

## II. STANDARDS

### A. Five-Step Evaluation of Disability

16  Under the Social Security Act, "disability" is the inability to engage "in any substantial

17  gainful activity by reason of any medically determinable physical or mental impairment which

18  can be expected to result in death or which has lasted or can be expected to last for a continuous

19  period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or

20  her physical or mental impairment(s) are so severe as to preclude the claimant from doing not

21  only his or her previous work but also, any other work which exists in the national economy,

22  considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

23

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*,

740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert (VE) or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th

Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

### A. ALJ's Findings in this Case

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2017. (AR 23.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: substance abuse disorder (methamphetamine and heroin), generalized anxiety disorder, schizoaffective disorder, personality disorder, depression, chronic obstructive pulmonary disease, obesity, sacroiliitis, post-laminectomy syndrome, and hip disorder. (AR 23.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 24.)

At step four, if Plaintiff stopped her substance abuse, the ALJ assessed Plaintiff as having the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), except the work must be routine and repetitive; she is expected to be off task five percent of the time; there can be frequent postural activities; there can be occasional interaction with coworkers, supervisors and the general public; there can be frequent exposure to atmospheric irritants, such as dust, fumes, odors or gases; there is no work at exposed heights; and she can occasionally work around moving machinery. (AR 34.)

The ALJ then concluded even if Plaintiff stopped her substance abuse, she was unable to perform any past relevant work. (AR 37.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: hand packager; dining room attendant; machine packager; and cook helper. (AR 38.)

As a result, the ALJ found Plaintiff not disabled from June 1, 2017, through the date of the decision. (AR 38-39.)

**B. Limited Range of Motion**

In 2016, Plaintiff saw Dr. Ali Nairizi with Nevada Advanced Pain Specialists for complaints of low back pain that continued after a failed back surgery performed in 2013. He described her as having very limited range of motion with 30 degrees of flexion, and very limited range of motion with extension in January, February, March, and April of 2016. (AR 935-938, 943, 953, 957-58.)

On January 17, 2019, Plaintiff had a consultative physical examination with Dr. Pamela Corson. Dr. Corson noted Plaintiff's complaint of a long history of low back pain, and that she

1  was initially treated with narcotics, but when she weaned from narcotics, she started using

2  heroin. She was not seeing a provider for her low back pain at that time. (AR 818.) On

3  examination, Dr. Corson found Plaintiff could bend and squat without difficulty, and she had full

4  range of motion in her back. (AR 819.) Dr. Corson concluded that while Plaintiff clearly had a

5  mental health illness which affected her ability to function in society, she had no physical

6  disability, and she had no physical limitations. (AR 820.)

7       At the initial level of Social Security review, on March 16, 2019, Navdeep S. Dhaliwal,

8  M.D., concluded Plaintiff had no postural limitations. (AR 111.)

9       Plaintiff complained of low back pain in April of 2019 (AR 860), and she was referred to

10  a pain management provider on July 26, 2019. (AR 1466.)

11       On December 11, 2019, Plaintiff saw Dr. Andrew Hsu at Spine Nevada. Dr. Hsu

12  observed Plaintiff had lumbar range of motion of fingertips to the knees and extension of -10

13  degrees with increased pain on extension more than flexion. Her hip range of motion was full

14  and pain free, and she had normal and symmetric muscle tone and in all extremities, as well as

15  normal and symmetrical strength in the bilateral lower extremities. She was diagnosed with

16  mechanical low back pain, lumbar spondylosis without myelopathy, SI joint

17  dysfunction/sacroiliitis, bilateral greater trochanteric syndrome, chronic lumbar radiculopathy,

18  and post-laminectomy syndrome. The goals of treatment included improvement in range of

19  motion and flexibility. (AR 1435, 1437.)

20       A physical therapy record from December 27, 2019, indicates Plaintiff had 19 degrees of

21  flexion in the lumbar spine, and 2 degrees of extension, as well as decreased core strength and

22  lower extremity flexibility. (AR 1427.)

23

8

1    The ALJ noted that the first record for treatment after Plaintiff's 2013 spine surgery was

2  not until January 2016 (with Dr. Nairizi), and the initial physical exam showed very limited

3  range of motion in the spine, but she had full motor strength in all muscle groups, and negative

4  lumbar quadrant tests bilaterally with no radiating pain in lumbar extension. Since that time, the

5  ALJ concluded there was limited evidence for ongoing back pain as the records focused mainly

6  on her mental health. The ALJ discussed that in her consultative examination with Dr. Corson,

7  Plaintiff had normal gait and full range of motion and normal motor strength in all areas, and

8  Dr. Corson opined she was capable of medium work with no other restrictions. The ALJ then

9  mentioned Plaintiff's next examination for back pain (with Dr. Hsu) in December of 2019,

10  noting moderate to marked tenderness but normal gait without the need for an assistive device;

11  the ability to perform heel and toe walk; hips with full and painless range of motion; and full

12  motor strength in bilateral lower extremities. (AR 28-29.)

13    The ALJ found Dr. Corson partially persuasive, but concluded that Dr. Corson failed to

14  consider the impact Plaintiff's lower back had on her postural abilities, and determined Plaintiff

15  could engage in postural activities on a frequent basis. (AR 30.)

16    Plaintiff argues that the ALJ mischaracterized Dr. Hsu's findings when he said Dr. Hsu

17  found Plaintiff had normal range of motion. Plaintiff further contends the ALJ did not account

18  for the records concerning her limited range of motion. Plaintiff maintains that if she cannot bend

19  down further than her knees, she cannot engage in considerable lifting and frequent bending and

20  stooping which is required for medium work pursuant to Social Security Ruling (SSR) 83-10.

21  She asserts the ALJ erred because he did not address how her limitations in forward flexion

22  impact her ability to perform sedentary, light or medium work.

23

9

The Acting Commissioner argues that Plaintiff's treatment with Dr. Nairizi predated her alleged disability onset date by over a year, and Dr. Nairizi said that while she had very limited spine range of motion, she had full strength. Moreover, the Acting Commissioner points out that Plaintiff did not see Dr. Hsu until three years later, and the ALJ's summary of Dr. Hsu's findings included the fact that she had full and painless range of motion in her *hips*, which accurately reflects Dr. Hsu's records. Next, the Acting Commissioner contends that medium work, as defined in the regulations, does not require the ability to perform postural activities. The Acting Commissioner asserts that SSR 83-10, which states that the full range of medium work usually requires frequent bending and stooping, does not carry for the force of law, and in any event, SSR 83-10's statement is consistent with the ALJ's finding Plaintiff could engage in frequent postural activities. The Acting Commissioner states that no physician opined that her limited range of motion would preclude Plaintiff from performing frequent postural activities, or that she even had any postural limitations (pointing out Dr. Corson found she had none). Finally, the Acting Commissioner argues that even if the ALJ erred, the error was harmless because one of the occupations the ALJ found Plaintiff could perform—hand packager— does not require any stooping, bending, or postural activities besides balancing.

Plaintiff is correct that the ALJ did not mention the limitation in range of motion in Plaintiff's *spine* noted by Dr. Hsu in December of 2019, nor the limited spinal range of motion documented by the physical therapist later that month. The ALJ did, however, specifically note that Dr. Corson failed to take into account the impact Plaintiff's lower back pain had on her postural abilities. The ALJ acknowledged Plaintiff had such a limitation, but without explanation, and with no reference to Dr. Hsu's or the physical therapist's findings regarding

1 Plaintiff's limited spinal range of motion, the ALJ found Plaintiff could engage in postural

2 activities on a frequent basis.

3 "The RFC assessment must first identify the individual's functional limitations or

4 restrictions and assess his or her work-related abilities on a function-by-function basis, including

5 the functions in paragraphs (b), (c) and (d) of 20 C.F.R. 404.1545 and 416.945." SSR 96-8P,

6 1996 WL 374184 (July 2, 1996). "Only after that may RFC be expressed in terms of the

7 exertional levels of work, sedentary, light, medium, heavy and very heavy." *Id*. The "RFC is

8 what an individual can still do *despite his or her limitations.*" *Id*. (emphasis added). The RFC "is

9 an administrative assessment of the extent to which an individual's medically determinable

10 impairment(s), including any related symptoms … may cause physical or mental limitations or

11 restrictions that may affect his ability to do work-related physical and mental activities." *Id*.

12 "[I]n order for an individual to do a full range of work at a given exertional level … the

13 individual must be able to perform substantially all of the exertional and nonexertional functions

14 required in work at that level." *Id*. As such, the ALJ must evaluate the person's ability to perform

15 each of these functions to decide what exertional level applies and whether the person can do a

16 full range of work at that exertional level. *See id*. The RFC assessment is required to be "based

17 on *all* of the relevant evidence in the case record[.]" *Id*. (emphasis original).

18 "Without careful consideration of an individual's functional capacities to support an RFC

19 assessment based on an exertional category, the adjudicator may either overlook limitations or

20 restrictions that would narrow the ranges and types of work an individual may be able to do[.]"

21 *Id*.

22 "The RFC assessment must include a narrative discussion describing how the evidence

23 supports each conclusion, citing specific medical facts … and nonmedical evidence…." *Id*.

1     Importantly, "[t]he adjudicator must also explain how any material inconsistencies or
2     ambiguities in the evidence in the case record were considered and resolved." *Id*.

3         SSR 83-10 describes the full range of medium work as requiring "considerable lifting"
4     and usually requires "frequent" bending and stooping. SSR 83-10, 1983 WL 31251. "Stooping"
5     is defined as "a type of bending in which a person bends his or her body downward and forward
6     by bending the spine at the waist." *Id*. "Frequent" is defined as being from one-third to two-
7     thirds of the time. *Id*.

8         The Acting Commissioner argues that the court should not consider the SSRs because
9     they are not binding law; however, "because [SSRs] represent the Commissioner's interpretation
10    of the agency's regulations, [courts] give them some deference" unless "they are inconsistent
11    with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n. 1 (9th Cir. 2001)
12    (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991) (en banc)). The Acting
13    Commissioner advances no specific basis for failing to give these SSRs deference, and the court
14    finds them persuasive. Moreover, while the Acting Commissioner argues that the SSR 83-10 is
15    not legally binding, she relies on SSR 83-10 in another portion of her argument. (*See* ECF No. 25
16    at 9:9-10.)

17        The ALJ did not consider the findings of Dr. Hsu and the physical therapist, which are
18    consistent with the findings of Dr. Nairizi before the alleged onset date, with respect to
19    Plaintiff's limited range of motion in the lumbar spine. Not only did the ALJ fail to address the
20    doctor's findings on Plaintiff's spine, the ALJ did not explain how he resolved the inconsistency
21    between the findings of all of her treating providers that she had *limited* range of motion and Dr.
22    Corson's conclusion that Plaintiff had *full* range of motion.

23

1    In sum, the ALJ erred in not considering *all* of the relevant medical evidence in

2  determining Plaintiff's RFC and in not identifying and explaining how he resolved

3  inconsistencies between the medical evidence. "If an ALJ's hypothetical does not reflect all of

4  the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a

5  finding that the claimant can perform jobs in the national economy.'" *Leach v. Kijakazi*, 70 F.4th

6  1251, 1255 (9th Cir. 2023) (quoting *Bray v. Comm'r of Soc. Sec. Amin.*, 554 F.3d 1219, 1228

7  (9th Cir. 2009)).

8    The court finds the error is not harmless. "An error is harmless only if it is

9  'inconsequential to the ultimate non-disability determination.'" *Lambert v. Saul,* 980 F.3d 1266,

10  1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

11  While the Dictionary of Occupational Titles (DOT) states that the Hand Packager position

12  involves no stooping, it does not state whether any other bending is required. *See* DOT 920.587-

13  018, 1991 WL 687916. The ALJ never asked the VE whether Plaintiff could perform any of the

14  occupations identified if she had limited range of motion in her lumbar spine. Nor did the ALJ

15  address with the VE whether Plaintiff could perform other work at the light or sedentary levels.

16  As such, remand is appropriate so the ALJ may consider *all* of the medical evidence with respect

17  to Plaintiff's lumbar spine and range of motion in determining Plaintiff's RFC and whether other

18  jobs exist in significant numbers that Plaintiff can perform despite her limitations.

19  **C. Mental Impairments**

20    **1. Drs. Kotler and Wright**

21    At the initial level, Susan Kotler, Ph.D., found Plaintiff could sustain concentration,

22  persistence and pace to carry out simple and some detailed instructions in a well-spaced setting

23

1  with limited public contact, and she could interact with the public in brief, non-intensive

2  encounters. (AR 113.) Dr. Wright agreed on reconsideration. (AR 146-47.)

3         The ALJ found the State agency psychological consultants persuasive as they are experts

4  in Social Security disability programs, the rules in 20 C.F.R. §§ 404.1527(e) and 416.927(e), and

5  in evaluation of medical issues in disability claims under the act; and they support their

6  conclusions by reviewing the majority of the medical record subsequent to Plaintiff gaining

7  sobriety. (AR 36-37.) The ALJ's RFC concluded Plaintiff could perform the sustained demands

8  of routine and repetitive work with occasional interaction with coworkers, supervisors and the

9  general public. (AR 34.)

10        The ALJ found the opinions of Drs. Kotler and Wright persuasive, but the ALJ did not

11  specifically address or incorporate their findings regarding the need for a well-spaced setting, or

12  for brief, non-intensive encounters with coworkers, supervisors or the public into the RFC.

13  "Occasional" meals up to one third of the time (SSR 83-10), and it is not readily apparent that

14  this is consistent with the limitation to brief, non-intensive encounters. The ALJ did not ask the

15  VE whether a person who could have only brief, non-intensive encounters with the public could

16  perform the jobs identified in response to the ALJ's hypothetical. In addition, there is nothing to

17  indicate the ALJ took into consideration the need for a "well-spaced setting" or that "occasional"

18  interaction with others would encompass that limitation. Therefore, the ALJ erred. *See* SSR 96-

19  8P (RFC "must include a narrative discussion describing how the evidence supports each

20  conclusion" and "explain how any material inconsistencies … in the evidence in the case record

21  were considered and resolved.").

22        In sum, remand is appropriate for the ALJ's consideration of these additional issues.

23  ///

14

**2. Dr. Goswami**

Plaintiff's treating psychiatrist, Dr. Goswami, filled out a mental RFC questionnaire on November 23, 2020. (AR 1132-1136.) With respect to the mental abilities and aptitudes needed to do unskilled work, he opined Plaintiff was "seriously limited but not precluded" in her ability to deal with work stress. Her ability to carry out very short and simple instructions was assessed as "unlimited or very good." She was "limited but satisfactory" in her abilities to understand and remember very short and simple instructions, to make simple work-related decisions, and to ask simple questions or request assistance, among other things. (AR 1134.)

With respect to the mental abilities and aptitudes needed to do semi-skilled and skilled work, Dr. Goswami opined Plaintiff was "limited but satisfactory" in her ability to understand and remember detailed instructions, and to set realistic goals or make plans independently of others. She was "seriously limited but not precluded" with respect to her ability to carry out detailed instructions and in her ability to deal with the stress of semiskilled and skilled work. She was also seriously limited in her ability to travel in unfamiliar places. (AR 1135.)

The ALJ found Dr. Goswami's opinions partially persuasive. He noted Dr. Goswami was a treating source with personal knowledge of Plaintiff's complaints, symptoms, treatment and functional abilities. He concluded Dr. Goswami's opinion that Plaintiff is limited but satisfactory in many mental health categories is consistent with his own examinations, which were mainly unremarkable. Finally, he noted that Dr. Goswami only treated Plaintiff since August 2019. (AR 36.)

Plaintiff argues the ALJ did not state reasons for rejecting Dr. Goswami's opinions that Plaintiff had serious limitations in the ability to deal with work stress and carry out detailed

1   instructions. Plaintiff further asserts the jobs the ALJ identified that Plaintiff can still perform all

2   require the ability to engage in detailed, but uninvolved tasks.

3          The Acting Commissioner argues that Dr. Goswami opined Plaintiff had satisfactory

4   ability to perform the mental functional demands of unskilled work, as well as some of the

5   demands of skilled work, including detailed instructions. The Acting Commissioner contends the

6   jobs identified by the ALJ were all unskilled occupations, and therefore, consistent with Dr.

7   Goswami's opinion. Finally, the Acting Commissioner asserts the fact that Dr. Goswami

8   assessed greater limitations in two functional areas needed to do semi-skilled and skilled work

9   does not require disturbing the ALJ's decision since no semi-skilled or skilled jobs were

10  identified.

11         First, Dr. Goswami opined that Plaintiff had the ability understand, remember, and carry

12  out very short and simple instructions for unskilled jobs. The form had no place for Dr. Goswami

13  to address Plaintiff's ability to engage in detailed tasks in performing unskilled work, but it did

14  in the section of the form covering skilled and semi-skilled work. On that portion of the form,

15  Dr. Goswami indicated Plaintiff was seriously limited in the ability to engage in detailed tasks in

16  performing skilled and semi-skilled work. It is important to note that Drs. Kotler and Wright

17  assessed Plaintiff as moderately limited in the ability to carry out detailed instructions, and that

18  she was capable of sustaining adequate concentration, persistence, and pace to carry out simple

19  and *some* detailed instructions in a well-spaced setting. (AR 113, 146-47.) Their limitations were

20  not qualified as pertaining to any particular type of work, *i.e.,* unskilled, semi-skilled or skilled.

21         The ALJ, on the other hand, assessed Plaintiff as being able to perform work that is

22  routine and repetitive, and used those terms in the hypothetical posed to the VE. (*See* AR 96.)

23

16

1    The ALJ did not discuss the opinions of Drs. Kotler, Wright, and Goswami relative to

2    Plaintiff's ability to engage in detailed tasks, and in failing to do so, the court finds the ALJ

3    erred.

4    The Dictionary of Occupational Titles (DOT) assigns each job a reasoning level on a

5    scale of one, which is the simplest, to six, which is the most complex. DOT, App. C, § III, 1991

6    WL 688702 (4th ed. 1991).As in *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), the four jobs

7    identified by the VE and adopted by the ALJ have a reasoning level of two. *See* Hand Packager,

8    DOT 920.587-018, 1991 WL 687916; Dining Room Attendant, DOT 311.677-018, 1991 WL

9    672696; Machine Packager, DOT 920.685-078, 1991 WL 687942; and Cook Helper, DOT

10   317.687-010, 1991 WL 672752.

11   Level one reasoning requires the application of "commonsense understanding to carry out

12   simple one- or two-step instructions" and the ability to "[d]eal with standardized situations with

13   occasional or no variables in or form these situations encountered on the job." DOT, App. C, §

14   III, 1991 WL 688702 (4th ed. 1991). Level two reasoning requires the application of

15   "commonsense understanding to carry out detailed but uninvolved written or oral instructions"

16   and the ability to "[d]eal with problems involving a few concrete variables in or from

17   standardized situations." *Id*.

18   In *Leach,* the Acting Commissioner argued that a person limited to short, simple

19   instructions could perform all jobs assigned reasoning level two. *Leach*, 70 F.4th at 1256. The

20   Ninth Circuit rejected that argument, pointing out that level one reasoning jobs require only

21   "simple one- or two-step instructions" while level two reasoning jobs require "detailed but

22   uninvolved … instructions." *Id*. "The key distinction between those two levels is that level-one

23   jobs require instructions involving at most two steps, whereas level-two jobs may require

'detailed'—that is, potentially longer—instructions." *Id.* (citation omitted). "A level-two job with 'detailed but uninvolved … instructions' could require an employee to follow <u>lengthy</u> simple instructions." *Id.* (emphasis original).

In the first instance, it is not clear whether Plaintiff even has the ability to perform longer, simple instructions. In addition, like *Leach*, the court cannot discern whether the jobs identified by the VE and ALJ require only "<u>short</u>, simple instructions" or longer, simple instructions. *Id.* at 1257 (emphasis original). "[A] limitation to 'short, simple instructions' does not necessarily restrict a claimant to level-one jobs[,]" as"[s]ome level-two jobs … might be consistent with a limitation to following short, simple instructions." *Id.* On the other hand, as the Fourth Circuit pointed out, a person "'limited to short, simple instructions … may not be able to carry out detailed but uninvolved instructions.'" *Id.* (quoting *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019)). This is because "'detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include.'" *Id.* (quoting *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019)).

The ALJ did not specifically address and explain Plaintiff's ability to carry out detailed instructions, and as a result, the ALJ may have "describe[ed] a hypothetical person with greater functional capacity than [Plaintiff] possesses." *Leach,* 70 F.4th at 1257. As such, the ALJ erred in relying on the VE's testimony, and the error was not harmless. *Id.* Thus, remand is appropriate on this additional basis.

Second, the ALJ did not specifically address Dr. Goswami's opinion that Plaintiff was seriously limited in dealing with work stress. The "ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). District courts within the Ninth Circuit have concluded that an

1  ALJ adequately encompasses a limitation of a low stress tolerance within an RFC that limits the

2  claimant to simple, repetitive tasks and limits contact with the public and co-workers. *See e.g.*

3  *Pullen v. Kijakazi*, No. 1:21-cv-00404-ADA-HBK, 2023 WL 373380, at *5 (E.D. Cal. Jan. 24,

4  2023), *report and recommendation adopted in* 2023 WL 2655808 (E.D. Cal. Mar. 27, 2023);

5  *Spencer v. Kijakazi*, No. 1:21-cv-00065-AWI-BAM, 2022 WL 4482567, at *3 (E.D. Cal. Sept.

6  27, 2022), *report and recommendation adopted in* 2023 WL 184974 (E.D. Cal. Jan. 13, 2023);

7  *Xiong v. Kijakazi*, No. 1:21-cv-00134-GSA, 2022 WL 2119029, at * 15-16 (E.D. Cal. June 13,

8  2022); *Keller v. Colvin*, No. 2:13-cv-0221 CKD, 2014 WL 130493 (E.D. Cal. Jan. 13, 2014)

9  (limitation to simple, repetitive tasks with reduced interpersonal contact accommodated doctor's

10  limitation regarding job stress).

11        Here, the ALJ's RFC and hypothetical only limited Plaintiff to routine, repetitive work,

12  and to occasional interaction with others. It is not clear that this adequately encompasses

13  Plaintiff's actual limitations concerning work stress where the ALJ did not account for the

14  psychological providers' opinions regarding Plaintiff's ability to engage in detailed tasks, and

15  that she could interact with others only in brief, non-intensive encounters in a well-spaced

16  setting. Therefore, remand is appropriate on this final basis.

17  **D. Remand for Further Proceedings or Calculation and Award of Benefits**

18        "A district court may 'revers[e] the decision of the Commissioner of Social Security, with

19  or without remanding the cause for a rehearing,'" "but 'the proper course, except in rare

20  circumstances, is to remand to the agency for additional investigation or explanation.'"

21  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc.*

22  *Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). In order to remand for an award of benefits,

23  certain prerequisites must be met. *Dominguez*, 808 F.3d at 407 (citing *Burell v. Colvin*, 775 F.3d

1133, 1141 (9th Cir. 2014)). First, the court must "determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id*. If it does, the court "must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Id*. (quoting *Treichler*, 775 F.3d at 1101).

If the court concludes the record is fully developed and there are no outstanding issues to be resolved, it must consider whether "'the ALJ would be required to find the claimant disabled on remand' if the 'improperly discredited evidence were credited as true.'" *Id*. If so, the court may exercise its discretion to remand for an award of benefits. *Id*. The court is not required to exercise such discretion. *Id*. (citing *Connett v. Barnhart*, 340 F.3d 871, 874-76 (9th Cir. 2003); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). The court may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Id*. at 408 (quoting *Burell*, 775 F.3d at 1141)).

Here, the ALJ made several legal errors; however, not all essential issues have been resolved and it is not clear at this point whether Plaintiff would be found disabled once these issues are resolved. On remand, the ALJ must address whether there are jobs that Plaintiff could perform notwithstanding the findings regarding the limited range of motion in her spine. The ALJ must also address whether there are still jobs that Plaintiff can perform if she is limited to a well-spaced setting and brief, non-intensive encounters with the public. Finally, the ALJ must determine if jobs exist in significant numbers that Plaintiff can perform taking into account her mental limitations. Therefore, this matter should be remanded for further proceedings consistent with this Order.

///

1

**IV. CONCLUSION**

2   Plaintiff's motion for reversal and/or remand (ECF No. 22) is **GRANTED;**

3   The Commissioner's cross-motion (ECF No. 25) is **DENIED**;

4   This matter is **REMANDED** for further proceedings consistent with this Order; and

5   The Clerk shall enter **JUDGMENT** accordingly.

6   **IT IS HEREBY ORDERED.**

7   Dated: July 25, 2023

8   _____

Craig S. Denney
9   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23